# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | |
|---|---|
| Arthur Ray Willoughby, ) | |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Dr. John Hagan, N.D.S.P., ) | Case No. 1:13-cv-054 |
| ) | |
| Defendant. ) | |

Before the court is a Motion for Summary Judgment filed by the defendant, Dr. John Hagan, on June 6, 2014. Judge Hovland has referred the motion to the undersigned for preliminary consideration. For the reasons set forth below, the undersigned recommends that the motion be granted.

## I.   BACKGROUND

Willoughby, an inmate at the North Dakota State Penitentiary ("NDSP"), has suffered from persistent skin rashes, lesions, and/or sores since 2003. He was treated at the NDSP by infirmary staff from 2003 to 2010. In 2010, he was referred to two Bismarck dermatologists, Drs. Mark Ebertz and John Luger, for further examination and treatment.

On June 27, 2011, Willoughby was admitted to the NDSP's infirmary for "decolonization" after he tested positive for MRSA.[1] According Dr. Hagan, Willoughby was "decolonized" within one weeks time and has been MRSA-free ever since.

---

[1] "Methicillin-resistant Staphylococcus aureus (MRSA) infection is caused by a strain of staph bacteria that's become resistant to the antibiotics commonly used to treat ordinary staph infections." <http://www.mayoclinic.org/diseases-conditions/mrsa/basics/definition/con-20024479>

1

Although his MRSA infection had apparently been eradicated, Willoughby continued to develop sores on his skin. On September 4, 2012, he returned to Dr. Luger, whose assessment was that his sores were possibly "factitial versus drug," meaning they were likely induced by deliberate human action.

On November 2, 2012, Willoughby presented to Dr. Hagan with another sore. A biopsy of the sore was taken at the University of North Dakota Center for Family Medicine in Bismarck, North Dakota, and sent to the University of Colorado for analysis. Upon completion of their analysis, medical professionals at the University of Colorado reported back that they were unable to identify any medical cause for the sore.

Dissatisfied with his various treatments and convinced that he was once again infected with MRSA, Willoughby initiated the above-entitled action in April 2013 against Dr. Hagan in his official and individual capacities, asserting:

> Since I've been incarcerated at NDSP in 2001 have been given so may differant antibiotics that I contracted the desease MRSA which caused these dark gross sores and scars on my body from my neck to my toes, In 2011 I was housed in the Infirmary for a week and given antibiotics and supposedly the MRSA was cured, but the sores and boils continued, they have gotten so bad that it makes me sick to my stomach just looking in a mirror, I have so may scars and sores on my body, that I even have troubles sleeping at night because of the pain that I suffer all the time. All the sores that I get all start with a pimple looking or boil looking thing, that turns into a blister that turns into a sore that I have to work on an all day basis to keep them in the healing, these sores are there for about 4 to 8 weeks before they heal completely, these sores are very painful, and look very bad, and soemtimes they get infected, then I have to work double hard to try and get them to heal. I have been accused of causing these sores personally, which is impossible, I have done nothing by try to keep these sores from getting anymore infected than they all start out to be, and in the end, I'm stuck with a gross nasty looking scars that I will have to hide from everyone including by own family, and if it were a case of self harm, how am I doing it??? I'm not.
>
> Dr. John Hagan acted with Deliberate Indifference toward myself Art Willoughby, Whereby inflicting cruel and unusual punishment in violation of the 8th. amendment

> of the U.S. Constitution.
>
> I have asked on numerous occasions to be seen by a diabetic specialist and a real would specialist, to which, I've only been sent to see a dermatoligest, I beleave that I have seen three or four dermataligests now an none of them are able to give a true or even real diagnosis, they all say the same thing, No one knows what this desease is and they can't give a real true diagnosis. accpet that it looks like classic MRSA.

(Docket No. 7) (errors in original). In his prayer for relief he requested $1 million in damages and "the true medical cure, which is to be hospitalized for the two weeks and given the IV antibiotics that is supposed to be given to cure the MRSA virease (sic)." (Id.).

On June 6, 2014, Dr. Hagan filed a Motion for Summary Judgment, asserting that he had qualified immunity from suit and that Willoughby's claims otherwise lacked merit. On August 12, 2014, Willoughby filed what the court construes as his response to Dr. Hagan's motion. Consequently, this matter is now ripe for the court's consideration.

## II.  STANDARD OF REVIEW

The following well-established principles govern the court's consideration of the defendants' motion for summary judgment:

> Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c). The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d (1986). The non-movant "must show there is sufficient evidence to support a jury verdict in [her] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir.1999). "Factual disputes that are irrelevant or unnecessary will not be counted," Anderson, 477 U.S. at 248, 106 S.Ct. 2505, and a mere scintilla of evidence supporting the nonmovant's position

will not fulfill the non-movant's burden, id. at 252, 106 S.Ct. 2505.

Uhiren v. Bristol-Meyers Squibb Company, Inc., 346 F.3d 824, 827 (8th Cir. 2003); see also Scott v. Harris, 550 U.S. 372, 380-81 (2007).

### III. DISCUSSION

#### A. Official Capacity Claim for Damages

A lawsuit against a state employee in his official capacity is akin to a lawsuit against the State, which has immunity under the Eleventh Amendment for any claims for damages in an action brought pursuant to 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332 (1979); Edelman v. Jordan, 415 U.S. 651 (1974); Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999); see also Kentucky v. Graham, 473 U.S. 159, 166-167 (1985) (discussing distinctions between individual and official capacity claims). Dr. Hagan is employed by the state. Consequently, Willoughby's claim for damages against Dr. Hagan in his official capacity is subject to dismissal on Eleventh Amendment grounds.

#### B. The lack of a triable Eighth Amendment claim

"The Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The government is obligated "to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). "For this reason, the Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Id.; see also Camberos

v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995) (requiring an inmate to demonstrate a deliberate indifference to his serious medical needs when alleging a deprivation of medical care). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir.1995). Deliberate indifference to such a need may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Robinson v. Hager, 292 F.3d 560, 563–64 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

It is well-established that a prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 342 (1981). The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of, but disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 835 (1994). This entails a showing of something more than mere negligence or medical malpractice. Roberson v. Bradshaw, 198 F.3d 645 (8th Cir.1999).

Here, Willoughy is not asserting that Dr. Hagen intentionally delayed, denied, or otherwise interfered with the provision of medical care. Rather, he expresses his dissatisfaction with his treatment and the individuals who prescribed it.

5

It is well-settled that a plaintiff's dissatisfaction with a course of medical treatment and the physician who prescribed it does not constitute a basis for a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002) (dismissing a claim for deliberate indifference that arose out of a disagreement over recommended treatment for hernias and a decision not to schedule a doctor's appointment); Perkins v. Kansas Dep't of Corrs., 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); Jones v. Natesha, 151 F.Supp. 2d 938, 945 (N.D. Ill. 2001) ("[D]issatisfaction or disagreement with the method of treatment or inability to effect a final cure does not constitute an Eighth Amendment claim of deliberate indifference."); see also Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmate's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir.1985) (inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Rather, a plaintiff can show that medical personnel disregarded a serious medical need "only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those

6

circumstances." Jones v. Natesha, 151 F.Supp. 2d at 945 (quoting Collignon v. Milwaukee Cty., 163 F.3d 982, 989 (7th Cir. 1998)).

Here, the record is devoid of any credible evidence that could arguably call Dr. Hagan's judgment into question or otherwise lend support to a claim that Dr. Hagan failed to take reasonable measures to address Willoughby's medical needs. In fact, the evidence strongly suggests the opposite.

Dr. Hagan has attested: (1) Willoughby received treatment for his skin condition from infirmary staff approximately 46 times between 2003 and 2009; (2) he has personally consulted with Willoughby 12 times since 2010; (3) he referred Willoughby to an internist, Dr. Jay Humber, for a diabetes consult in April 2008; (4) he referred Willoughby to two board-certified dermatologists, Drs. Ebertz and Luger, who examined and treated Willoughby multiple times; (5) he arranged for Willoughby to undergo a "decolonization process" when Willoughby tested positive for MRSA; and (6) at Dr. Luger's request, he arranged for Willoughby to undergo a biopsy University of North Dakota Center for Family Medicine in November 2012. (Docket No. 25-1).

With respect to Willoughby's diabetes, objective medical records reveal that Dr. Humber was called in to assess Willoughby and formulate a treatment plan. (Docket No. 25-9).

As for Willoughby's skin issues, the objective medical records submitted by Dr. Hagan evince that Willoughby was seen by Dr. Ebertz, who, on October 19, 2011, biopsied one of Willoughby's lesions and further recommended that Willoughby apply Bactroban ointment to his sores. (Docket No. 25-2). According to the pathologist's report dated October 21, 2011, Willoughby's final diagnosis was "[i]nterdermal nevus." (Id.).

The records next evince that Willoughby was seen by Dr. Luger, who, on February 11, 2011, ordered additional biopsies. (Docket No. 25-3). In treatment notes dated March 16, 2011, Dr.

7

Ebertz reported that the biopsies were "nonspecific but did show a subcorneal blister with neutrophils consistent with impetigo." (Docket No. 25-4). He diagnosed Willoughby's condition as "[r]ecurrent bullous impetigo with erosions of the right leg." (Id.).

The records also confirm that Willoughby's lesions were again biopsied at the University of North Dakota Center for Family Medicine and that tissue samples were sent to the University of Colorado for analysis. (Docket No. 25-5 and 25-7). According to the University of Colorado's subsequent report, the samples did not yield any definitive answers as to the cause of Willoughby's condition. (Docket No. 25-7).

Finally, the records indicate that Willoughby returned to Dr. Luger on September 4, 2012. (Docket No. 25-8). Dr. Luger's assessment was "[i]deopathic pruritus with excessive excoriation, possible factitial versus drug." (Id.).

The court appreciates that Willoughby's ongoing health issues are a source of frustration. Dr. Hagen's response can hardly be characterized as unreasonable or indifferent, however. Willoughby has received and continues to receive extensive treatment for his skin condition from medical professionals, including two board-certified dermatologists. His dissatisfaction with his treatment and preference to see a "diabetic specialist" as opposed to a dermatologist–a doctor whose specialty is the treatment of skin diseases– does not constitute the basis for a cognizable Eighth Amendment claim. Because he has not brought forth sufficient evidence to sustain a cognizable claim, the court need not further address the issue of qualified immunity.

## IV. CONCLUSION AND RECOMMENDATION

The undersigned **RECOMMENDS** that the court grant Dr. Hagen's Motion for Summary Judgment (Docket No. 24) and **DISMISS** the above-captioned action with prejudice.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 12th day of August, 2014.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court